UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

ANDRE DAVIS,

                Plaintiff,                     Case No. 1:12-cv-258

v.                                          Honorable Robert Holmes Bell

MARY BERGHUIS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss all of Plaintiff's claims except for his retaliation claims against Defendants Walton and Johnson. Thus, Defendants Berghuis, Vialpando and Gregoire will be dismissed for failure to state a claim, but the Court will allow service of the complaint against Defendants Walton and Johnson.

**Discussion**

I.      Factual allegations

Plaintiff Andre Davis is a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, though the events about which he complains occurred while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF), and the named Defendants are employees of LRF: Warden Mary Berghuis, Assistant Deputy Warden (ADW) Sherry Walton, Classification Directors Daryl Johnson and Mario Vialpando, and Corrections Officer (unknown) Gregoire.

In June 2010, Defendant Johnson conducted Plaintiff's initial classification interview at LRF, and she promised to assign him to the first available opening for a clerk position if he was cleared by the Inspector.[1] She then placed Plaintiff in the job pools for "Clerk" and "Horticulture." (Compl., docket #1, Page ID#3.)

On July 29, 2010, Johnson gave Plaintiff a position as a "Morning Shift General Yard Worker" (*Id.*) On August 9, Plaintiff wrote a grievance against Johnson for "paying [Plaintiff] at an improper rate." (*Id.*) ADW Walton reviewed the grievance with Plaintiff and asked him, "Is this really how you want to begin your time at this facility?" (*Id.* at Page ID##3-4.) Plaintiff interpreted this to be a "thinly veiled threat." (*Id.* at Page ID#4.)

On September 7, 2010, Plaintiff wrote a grievance against Walton in which he claimed that she retaliated against him. On September 8, Plaintiff wrote a complaint to LRF Deputy Warden Jim Varboncouer "for the reverse discriminatory actions by [ADW] Walton," and Plaintiff

---

[1] Under LRF policies, prisoners must undergo screening before receiving an assignment as a school tutor or clerk, because those positions are "Special Security Assignments." (Compl., Page ID#3.)

requested to be placed in a then-vacant clerk assignment.  (*Id.*)  On September 11, Inspector Evans cleared Plaintiff for assignment to a clerk position.

On October 13, 2010, Walton interviewed Plaintiff regarding his grievance against her, though MDOC policy provides that staff involved in a grieved issue may not participate in a grievance investigation or response.  She was "hostile" to Plaintiff and told him "I know you don't expect to get a job working under me after this."  (Compl., Page ID#4.)  Plaintiff apparently complained about the fact Walton reviewed his grievance, but Warden Berghuis stated that it is up to MDOC staff to determine who will respond to grievances.

On January 9, 2011, Plaintiff "attempted to resolve a grievable issue" with Johnson because she had placed another prisoner in the available law-clerk position, though Plaintiff was at the top of the list to receive that assignment.  A few days later, Johnson "admitted that she tampered with the Clerk pool."  (*Id.* at Page ID#4.)  Plaintiff contends that Johnson "acted in furtherance of ADW Walton's threat of reprisal."  (*Id.* at Page ID#5.)

On January 19, 2011, Plaintiff wrote a complaint to the MDOC's Office of Equal Employment Opportunity requesting an investigation into Berghuis's and Walton's failure to abide by MDOC policy and their retaliatory conduct.[2]  On January 20, ADW Walton again violated MDOC policy by interviewing Plaintiff regarding another grievance that he had filed against her.

Defendant Vialpando replaced Johnson as the Classification Director in 2011.  On March 25, 2011, Vialpando assigned Plaintiff to work with the yard crew as a horticulture worker. The yard crew is responsible for tending flower beds in front of the facility and gardens behind the

---

[2]Plaintiff received a response on February 8, 2011, indicating that the complaint had been forwarded to Prison Legal Affairs.

facility.  The supervisor of the yard crew, Officer Gregoire, tasked Plaintiff with caring for the flower beds.  Several weeks later, Gregoire scored Plaintiff at "39 out of 39 possible points" on a work evaluation, and indicated that he would "take [Plaintiff] back on the Yard Crew at any time."  (*Id.*)

On September 2, 2011, some prisoners were taken by ambulance to the local hospital after they ingested the leaves or seeds of a plant growing in the prison gardens.  The next day, Plaintiff observed Gregoire digging in the gardens, pulling up plants, and placing them in plastic bags.  Gregoire later selected two prisoners to walk around the grounds to look for more of the "dangerous plants," as he called them.  (*Id.* at Page ID#7.)

On September 8, Walton told Plaintiff that she had "complete autonomy" to handle the problems regarding the LRF gardens, and that Plaintiff would be terminated from his position and placed on "Double O – Room Confinement" status.[3]  (*Id.*)  That same day, Gregoire wrote a work report accusing Plaintiff of being "aware of and/or complicit in" the growing of the dangerous plants, and indicating that Plaintiff would be terminated from his assignment immediately.  (*Id.*) Plaintiff asserts that there was no evidence linking him to the prisoners involved in growing the plants or to the plots where the plants were grown.  He contends that he was terminated because of Walton's "deep-seated animosity."  (*Id.* at Page ID#8.)  On September 16, Classification Director Vialpando "acted in concert" with ADW Walton to reclassify Plaintiff to Double-O status and confinement to his room from 8:00 AM to 4:30 PM, Monday through Friday.  (*Id.*)

---

[3] "Double-O" or "OO" status is a commonly-used prisoner reference to "unemployable status" as defined under MDOC Policy Directive 05.01.100.  A prisoner may be reclassified as "unemployable" if "[t]he prisoner refuses to participate in program classification as required by this policy," or if "[t]he prisoner has a documented history of disruptive behavior on a work or school assignment."  *Id.* at ¶ X.  Prisoners on unemployable status are not permitted to enjoy more leisure time than prisoners who work full time.  *Id.* at ¶ Z.  In addition, LRF policy provides that a prisoner who refuses to work or who is placed on unemployable status for "irresponsible or disruptive behavior" will be placed on "room confinement" for at least 30 days. (Compl., Page ID#7.)

The Double-O status prevented Plaintiff from working, and the room confinement hindered Plaintiff's ability to obtain outdoor exercise. Because LRF does not have a night yard, Plaintiff was forced to choose between eating dinner or going to the yard to obtain "at least" an hour of exercise each day. (*Id.* at Page ID#9.) Plaintiff has high cholesterol and the lack of exercise caused his cholesterol levels to rise and his weight to increase by twenty pounds. The room restriction also prevented Plaintiff from using the prison phone during business hours, which made it difficult for him to contact his attorneys in connection with a motion for relief from judgment from his criminal conviction.

On September 21, 2011, Walton prepared a statement falsely asserting that Plaintiff was personally responsible for growing dangerous plants because some of them were found in a garden/flower plot that Plaintiff was responsible for tending. Berghuis supported Walton's description of the events and added her own assertion that Plaintiff was using a plot to conceal containers of fermenting alcohol.

On October 5, 2011, ADW Walton stated that Plaintiff was on Double-O status and room confinement because he has a "documented history of disruptive behavior" on work assignments. (*Id.* at Page ID#8.) On November 29, 2011, Warden Berghuis falsely alleged that Plaintiff refused a work assignment and determined that Plaintiff should remain on Double-O status.

The Double-O status was not removed until January 28, 2012, when Plaintiff was given a low-paying job as a janitor. By that time, Plaintiff had been on Double-O status ninety days longer than any of the other horticulture workers who were terminated from their positions in connection with the plant-growing incident. Plaintiff was the only horticulture worker accused of

growing dangerous plants who "formally complained" about his room confinement. (*Id.* at Page ID#12.)

Based on the foregoing allegations, Plaintiff claims that Defendants Walton and Johnson retaliated against him in violation of the First Amendment, denied him his right to equal protection under the Fourteenth Amendment, engaged in a conspiracy to violate his rights, and engaged in "wanton misconduct" in violation of state law. (Compl., Page ID#3.)  Furthermore, Plaintiff claims that Defendants Berghuis, Walton, Vialpando, and Gregoire retaliated against him for exercising his First Amendment rights, denied him his right to due process under the Fourteenth Amendment, denied him outdoor exercise, and engaged in a conspiracy to violate his rights.  He also, asserts that Defendants Berghuis, Walton, Vialpando, and Gregoire are liable for intentional infliction of emotional distress and "willful misconduct" under state law. (*Id.* at Page ID#6.)

As relief, Plaintiff seeks an injunction restoring his job as a horticulture worker and expunging the false work report from his record.  He also seeks compensatory and punitive damages, including lost wages of $1.77 per day since September 8, 2011.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

-6-

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). As to the first element of a retaliation claim, the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Id*.

With respect to the second element, the adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; thus, the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Even a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).

With respect to the third element of a retaliation claim, causation, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). Nevertheless, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*

-8-

*v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

### 1. Defendants Johnson and Walton

Johnson allegedly retaliated against Plaintiff by assigning him to a yard-work position rather than a law-clerk position in July 2010, and by assigning an available law-clerk position to another prisoner on or before January 9, 2011, even though Plaintiff was at the top of the list to receive that position. Plaintiff also claims that Defendant Walton retaliated by making threatening statements when reviewing a grievance against her, by including certain false statements in a report about the plant-growing incident, and by ensuring that Plaintiff would be terminated from his horticulture position and placed on unemployable status and room confinement.

Plaintiff's claim that Johnson retaliated against him in July 2010 is purely conclusory. There is no indication that Plaintiff filed any grievances or complaints, or engaged in any other protected conduct, until *after* Johnson assigned him to the yard-worker position. Moreover, Johnson told Plaintiff that he needed to be cleared by the inspector before he would be eligible for a law-clerk position, and Plaintiff was not cleared for the position until September. Thus, Johnson's decision could not have been motivated by Plaintiff's protected conduct.

With respect to Plaintiff's other allegations against Johnson and Walton, however, the Court concludes that they are sufficient to warrant service of Plaintiff's retaliation claims against them.

### 2.  Defendant Berghuis

Plaintiff claims that Defendant Berghuis retaliated against him by allowing ADW Walton to review grievances filed against her (in violation of prison policy), by supporting Walton's assertions that Plaintiff was responsible for growing the dangerous plants, by falsely accusing Plaintiff of concealing containers of fermenting alcohol in his garden plot, and by falsely alleging that Plaintiff refused a work assignment as justification to continue Plaintiff's unemployable status.

Plaintiff's retaliation claim against Berghuis fails because he fails to identify a plausible connection between Berghuis's actions and any protected conduct.  The mere fact that Plaintiff filed a complaint against Berghuis with the MDOC's Office of Equal Employment Opportunity, and filed grievances against other officers, several months prior to Berghuis's actions is not sufficient, in itself, to establish causation.  *See Coleman v. Bowerman*, No. 11–1501, 2012 WL 1109613, at *2 (6th Cir. Apr. 4, 2012) ("[W]hen other evidence of retaliatory motive is lacking, we have been reluctant to hold that temporal proximity is sufficient to establish causation.") (citing *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)).  None of Plaintiff's other allegations suggest that Berghuis's actions were motivated by Plaintiff's protected conduct.  Thus, Plaintiff fails to state a plausible retaliation claim against Berghuis.

### 3.  Defendants Gregoire and Vialpando

Plaintiff claims that Defendants Gregoire and Vialpando retaliated against him in the following ways:  Gregoire falsely implicated Plaintiff in the plant-growing incident, which caused Plaintiff to lose his horticulture position, and Vialpando placed Plaintiff on Double-O status and room confinement.  Like his retaliation claims against Berghuis, Plaintiff's claims against Gregoire

-10-

and Vialpando fail because Plaintiff fails to identify a plausible connection between Defendants'
actions and any protected conduct.  The mere fact that Plaintiff filed grievances or complaints against
other officers hardly suggests that Gregoire or Vialpando retaliated against Plaintiff for that conduct.
Indeed, his allegations suggest otherwise, as he acknowledges that after he filed those grievances and
complaints, Vialpando and Gregoire acted favorably toward Plaintiff:  Vialpando assigned Plaintiff
to the horticulture position and Gregoire gave Plaintiff a positive work report.  Thus, Plaintiff's
allegations that Defendants Gregoire and Vialpando purposefully retaliated against him are too
conclusory to state a claim.

### B.     Equal Protection

Plaintiff contends that Defendants Johnson, Walton, and Berghuis denied him his
right to equal protection (*see* Compl., Page ID#3), though the basis for the claim is unclear.  Plaintiff
apparently refers to the fact that Defendants did not comply with prison procedures:  Classification
Director Johnson allegedly tampered with the prisoner jobs pool, ADW Walton improperly reviewed
a grievance that was filed against her, and Warden Berghuis allowed Walton to conduct that review.[4]
(*See id.* at Page ID##3-5.)

The Equal Protection Clause commands that no state shall "deny to any person within
its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  The Clause
"protects against invidious discrimination among similarly-situated individuals or implicating
fundamental rights."  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).
A state practice that interferes with a fundamental right or discriminates against a suspect class of

---

[4]Plaintiff also alludes to "reverse-discriminatory actions" by Walton, but he does not specify what those actions were
or why they were discriminatory.  (*See* Compl., Page ID#2.)

individuals requires strict scrutiny. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Where

neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

"Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is

so unrelated to the achievement of any combination of legitimate purposes that the court can only

conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411

F.3d 697, 710 (6th Cir. 2005)).

Plaintiff does not allege discrimination based on membership in an identifiable group

or class; thus, at most he states a "class-of-one" claim, which requires him to show that he "has been

intentionally treated differently from others similarly situated and that there is no rational basis for

the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails to allege facts from which to infer that Defendants treated similarly-

situated prisoners more favorably, or that Defendants purposefully discriminated against him.

Defendants' failure to follow prison policies is not sufficient, by itself, to state a claim. *See Clark*

*v. Johnston*, 413 F. App'x 804, 818 (6th Cir. 2011) (dismissing class-of-one equal-protection claim

alleging that prison officials selectively enforced prison rules). Accordingly, he does not state an

equal-protection claim.

### C.      Procedural Due Process

Plaintiff alleges that Defendants violated his right to procedural due process under

the Fourteenth Amendment because they prepared a report falsely accusing him of involvement in

growing dangerous plants in the prison gardens, terminated him from his horticulture position, and

placed him on unemployable status and room confinement, in each case, without providing him a hearing to prove his innocence.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. In order to state a claim, however, a plaintiff must allege that he was deprived of a protected property or liberty interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff's claim fails because none of the alleged deprivations implicates his right to due process.

First, the loss of a prison job does not implicate a right to due process; the Sixth Circuit has consistently found that prisoners have no constitutionally-protected liberty interest in prison employment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").

Likewise, the negative work report does not implicate Plaintiff's right to due-process. Plaintiff asserts that the report will remain in his prison file and could be used to prevent him from receiving favorable consideration for parole, increase his security level, and/or render him ineligible for special programming or special-security work assignments. As indicated, however, Plaintiff does not have a constitutional right to a prison job, much less a special-security work assignment. Moreover, Plaintiff does not have a protected interest in release on parole, *see Sweeton v. Brown*,

-13-

27 F.3d 1162, 1164-165 (6th Cir. 1994) (holding that the Michigan system does not create a liberty interest in parole); *accord Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011), in being held at a particular security level or security classification, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976), or in access to vocational or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

Finally, Plaintiff's placement on unemployable status and room confinement did not implicate his right to due process. A prisoner can raise a due-process challenge to prison conditions that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 486–87 (1995). The Sixth Circuit repeatedly has found, however, that confinement in administrative segregation (which is more restrictive than mere room confinement during work hours), even for an extended period of time, does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 910, 812-13 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117 days of segregation while reclassification was delayed due to prison crowding); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence placed in segregation after completing thirty days of detention for misconduct conviction); *see also Jones v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) ("In this circuit, we have held that . . . placement in administrative segregation is 'atypical and significant in relation to the ordinary incidents of prison life' in *extreme circumstances*, such as when the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation.") (emphasis added).

-14-

Furthermore, the Sixth Circuit has specifically held that neither confinement to a cell on weekdays while other prisoners work or attend school, *see Ingram v. Harry*, 97 F. App'x 20, 21 (6th Cir. 2004), nor placement on unemployable status for ninety days, *see Williams v. Straub*, 26 F. App'x 389, 390 (6th Cir. 2001), is an atypical and significant hardship.

Therefore, because Plaintiff does not allege that he was deprived of a protected interest or suffered an atypical and significant hardship, he fails to state a due-process claim.

### D.    Eighth Amendment

Plaintiff asserts that Defendants denied him the opportunity to obtain outdoor exercise while he was on room confinement, which the Court construes as an Eighth Amendment claim.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes*, 452 U.S. at 345-46.  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

-15-

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims)).

Eighth Amendment standards entitle prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920-927 (6th Cir. 1985). Thus, the Sixth Circuit has held that some limitations on outdoor exercise may violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087-88 (6th Cir. 1995) (citing *Walker*, 771 F.2d at 927, and *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)). Yet, the court has declined to find that minimum yard time is constitutionally required in all circumstances. *Rodgers*, 43 F.3d at 1087-88. Instead, the court has held that when yard time is extremely limited or denied altogether, the prison may be required to provide a legitimate penological purpose for the deprivation. *Id.* (citing *Patterson*, 717 F.2d at 289). In contrast, Plaintiff does not allege that he was completely deprived of yard time. He merely claims that he could not use the yard for *at least* one hour a day *on weekdays*, *unless* he chose to forgo a meal. In a similar case, the Sixth Circuit held that a prisoner's inability to exercise in the prison yard due to confinement to his cell for twenty-three hours per day, Monday through Friday, does not violate the Eighth Amendment. *Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003).

Finally, to the extent that Plaintiff's health suffered as a result of a limited ability to of exercise, he fails to allege that he faced a serious risk of harm, or that Defendants were aware of

that risk and deliberately ignored it. *See Mingus*, 591 F.3d at 479-80. In sum, therefore, Plaintiff's allegations do not state an Eighth Amendment claim.

### E. Conspiracy

Plaintiff asserts that he is bringing a conspiracy claim against Defendants, though the conspiratorial conduct is not clearly identified in the complaint. Presumably, Plaintiff contends Defendants Walton and Johnson conspired to prevent Plaintiff from obtaining a law clerk position, and that Defendants Berghuis, Walton, Vialpando, and Gregoire conspired to implicate Plaintiff in the plant-growing incident (leading to the loss of Plaintiff's job, placement on unemployable status, and room confinement).

To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful

-17-

actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative. None of the allegations establish a link or agreement between the actions of the alleged conspirators. In the words of the Supreme Court, Plaintiff's allegations of parallel conduct, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *See Twombly*, 550 U.S. at 556; *see also Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("[A] conclusory allegation that the defendants acted in concert . . . without more, fail[s] to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive [plaintiff] of his civil rights."). Therefore, Plaintiff fails to state a plausible conspiracy claim against Defendants.

### F.    Respondeat Superior Liability

The Court has determined that Plaintiff fails to state claims directly implicating Defendant Berghuis in a specific violation of Plaintiff's constitutional rights, though it will allow Plaintiff's retaliation claims against Defendants Walton and Johnson to proceed. The Court notes that Berghuis also is not liable merely because of her supervisory role over Walton, Johnson, or any other Defendant. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 566 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, Plaintiff does not state a claim against Berghuis merely because she was a supervisor over other Defendants, or because she failed to correct their conduct.

### G. Wanton or Willful Misconduct (state law)

Plaintiff also asserts that Defendants engaged in willful and/or wanton misconduct (*see* Compl., Page ID##3, 6), which is an intentional tort under Michigan law. *See Hill v. City of Saginaw*, 399 N.W.2d 398, 402-03 (Mich. Ct. App. 1986). "Willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does[.]" *Id.* Plaintiff's allegations fail to meet the foregoing standard. As indicated with respect to Plaintiff's Eighth Amendment claim, Plaintiff does not allege that Defendants were aware of any risk of harm to Plaintiff, and there is no indication that they were deliberately indifferent to such a risk or intended that harm would result from their actions. Indeed, Plaintiff's claim of "misconduct" appears to rest on the fact that Defendants did not comply with prison regulations, but that fact is not sufficient to state a claim on its own. *Cf. Stott v. Wayne County*, 569 N.W.2d 633, 636 (Mich. Ct. App. 1997) ("[T]he mere fact that . . . defendants intentionally failed to follow statutorily authorized rules and regulations promulgated by the Department of Corrections . . . does not convert their claims of negligence into claims of intentional torts."). Thus, Plaintiff fails to state an intentional-tort claim for wanton or willful misconduct.

-19-

### H.      Intentional Infliction of Emotional Distress (state law)

Finally, Plaintiff asserts a state-law claim of intentional infliction of emotional distress (IIED).  An IIED claim consists of four elements:  (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010).  Additionally, liability has been limited to circumstances "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto–Owners Ins. Co.*, 374 N.W.2d 905, 908-09 (Mich. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  None of Plaintiff's allegations indicate that Defendants engaged in outrageous and extreme conduct or caused Plaintiff severe emotional distress.  Accordingly, Plaintiff fails to state an IIED claim.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Berghuis, Vialpando, and Gregoire will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Furthermore, the Court dismisses Plaintiff's claims that Defendants violated his right to equal protection or due process under the Fourteenth Amendment, violated his right to avoid cruel and unusual punishment under the Eighth Amendment, engaged in a conspiracy to violate his rights, engaged in wanton or willful misconduct, or engaged in conduct giving rise to an IIED claim.  Therefore, the Court will allow service of the complaint against Defendants Walton and Johnson solely with respect to Plaintiff's retaliation claims against them.

An Order consistent with this Opinion will be entered.

Dated: <u>July 31, 2012</u>                                  /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE